UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO.: 8:23-cr-12-VMC-MRM

ANDRE ADAMS, JR.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Suppress, filed on March 9, 2023.  (Doc. 20).  Defendant Andre Adams, Jr., is charged by indictment with one count of possession with intent to distribute a controlled substance (21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)) (Count One); one count of possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(i)) (Count Two); and one count of possession of a firearm and ammunition by a person previously convicted of a felony (18 U.S.C. §§ 922(g)(1) and 924(a)(8)) (Count Three).  (Doc. 1 at 1-3).[1]  In the motion *sub judice*, Defendant seeks to suppress all evidence seized during the execution of two specified search warrants.  (Doc. 20 at 1).

The Government filed a response in opposition on March 23, 2023.  (Doc. 25).  The Undersigned held an evidentiary hearing on June 8, 2023.  (Docs. 35, 40,

---

[1]  Pinpoint page citations for documents refer to CM/ECF pagination.

48).[2]  For the reasons set forth below, the Undersigned found that Defendant had failed to make the substantial preliminary showing that he was entitled to a hearing on whether a so-called *Franks* violation occurred and, therefore, limited the issues at the hearing to whether the warrants were supported by probable cause.  (*See* Docs. 26, 29, 35).  As a result, the parties were not permitted to present any argument or evidence related to Defendant's position that a so-called *Franks* violation occurred. (*Id.*).  This matter is ripe for review.

For the reasons explained below, the Undersigned recommends that Defendant's Motion to Suppress (Doc. 26) be **DENIED**.

## I.    Factual and Procedural Background

As noted above, Defendant Andre Adams, Jr., is charged by indictment with one count of possession with intent to distribute a controlled substance (21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)) (Count One); one count of possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(i)) (Count Two); and one count of possession of a firearm and ammunition by a person previously convicted of a felony (18 U.S.C. §§ 922(g)(1) and 924(a)(8)) (Count Three).  (Doc. 1 at 1-3).

Detective Greg Dunlap began investigating Defendant after receiving a tip that someone named "Dre" was selling cocaine and fentanyl out of an East Bradenton

---

[2]  A transcript of the evidentiary hearing is filed at docket entry number 48.  The Undersigned refers to the transcript herein as "Tr." followed by the appropriate page number.

residence.  (Doc. 25 at 1; Tr. at 6, 7-8).  During the investigation – and relevant to the motion *sub judice* – the Government sought and obtained two search warrants, one permitting the search of a residence at 303 22nd Street East Bradenton, Florida ("the Residence Warrant" (Doc. 25-1 at 9-10)) and the other permitting the search of a specific storage unit ("the Storage Unit Warrant" (Doc. 25-1 at 16-17)).[3]  The applications for the Residence Warrant and the Storage Unit Warrant were each supported by separate affidavits from Detective Dunlap ("the Residence Affidavit" (Doc. 25-1 at 1-8) and "the Storage Unit Affidavit" (Doc. 25-1 at 12-15)).  The Residence Warrant was executed on August 4, 2022, (Doc. 20 at 6; Tr. at 36), and the Storage Unit Warrant – the application for which relied in part on the results of the search of the residence – was executed later the same day, (Doc. 20 at 6-7).

Defendant was indicted on January 10, 2023.  (Doc. 1).  Defendant filed the motion *sub judice* on March 9, 2023, arguing that the evidence recovered from the search of the residence must be suppressed because:  (1) Detective Dunlap's affidavit did not establish probable cause that the property sought would be within the confines of the place to be search at the time the warrant was issued; (2) the scope of the warrant was overly broad, failing to properly specify the places to be searched and the things to be seized; and (3) the Residence Affidavit included material misrepresentations and omissions in violation of *Franks v. Delaware*, 438 U.S. 154,

---

[3] Both warrants were reviewed and issued by Circuit Court Judge Frederick Mercurio.  (*See* Doc. 25-1 at 9-10, 16-17).

171-72 (1978).  (Doc. 20 at 10-17).  Defendant also contends that suppression of evidence obtained from the search of the storage unit is warranted because: (1) evidence obtained from a prior illegal search (*i.e.*, the search of the residence) cannot be used to establish probable cause for a new warrant; (2) the search warrant application contains opinions, beliefs, and possibilities in addition to facts; and (3) the Storage Unit Warrant lacks particularity.  (*Id.* at 18-20).

The Undersigned considers each argument in turn below, beginning with Defendant's contention that the Residence Affidavit included material misrepresentations and omissions.  In doing so, the Undersigned first considers whether Defendant was entitled to a hearing on his *Franks* contention.  Because the Undersigned answers the question in the negative, no such hearing was held.

## II.    The Residence Warrant

### A.    Whether the Residence Affidavit Included a *Franks* Violation

#### i.    Parties' Arguments

Defendant argues that he is entitled to a *Franks* hearing, at which he would prove a *Franks* violation occurred because the Residence Affidavit included material misrepresentations and omissions.  (Doc. 20 at 14-17).  In support, Defendant asserts two grounds:  (1) that the trash pull described in the affidavit occurred on June 9, 2022, as opposed to June 13, 2022—the date cited in the affidavit—and (2) that the affidavit did not mention that the three bags containing white substance—one of which tested positive for fentanyl—were found inside a pill bottle with a name of

someone other than Defendant.  (*Id.* at 14-15).  Based on these alleged
misrepresentations and omissions, Defendant maintains that the Government cannot
rely on the good-faith exception to the warrant requirement, which warrant
Defendant argues is otherwise unsupported by probable cause.  (*See id.*).

In response, the Government argues that Defendant cannot meet his burden
to show that a *Franks* hearing is warranted.  (Doc. 25 at 9-11).  First, the
Government asserts that the mistake in the date of the trash pull is not material,
given that (1) Detective Dunlap conducted surveillance on both June 9, 2022, and
June 13, 2022, as well as the days preceding and following these dates and
(2) Defendant admits in his motion that the scrivener's error is "not absolutely
material."  (*Id.* at 9-10).  Second, the Government contends that the inclusion of the
name on the pill bottle would not eliminate probable cause.  (*Id.* at 10-11).  The
Government also asserts that given Detective Dunlap's reference to other persons
he suspected of committing crimes in or at the residence, Defendant cannot show
that Detective Dunlap intentionally or recklessly omitted information about the pill
bottle.  (*Id.*).  As a result, the Government argues that, in the event the warrant was
not supported by probable cause, suppression is not required under the good-faith
exception to the warrant requirement.  (*Id.* at 11-13).

ii.    **Legal Standards**

Under the Fourth Amendment, a search warrant must be supported by an
affidavit containing information that "is believed or appropriately accepted by the

affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  Search warrants and

their affidavits are entitled to a presumption of validity.  *United States v. Lebowitz*, 676

F.3d 1000, 1010 (11th Cir. 2012).  Yet, "[u]nder *Franks*, a defendant may challenge

the veracity of an affidavit in support of a search warrant if he makes a 'substantial

preliminary showing' that (1) the affiant deliberately or recklessly included false

statements, or failed to include material information, in the affidavit; and (2) the

challenged statement or omission was essential to the finding of probable cause."

*United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks*, 438 U.S.

at 155-56); *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1182 (11th Cir. 2009)

(quoting *Franks*, 438 U.S. at 155-56).  A defendant who satisfies both prongs is

entitled to an evidentiary hearing on the issue.  *Arbolaez*, 450 F.3d at 1293.

While the Eleventh Circuit has not specified the standard of proof under

which a defendant must make the "preliminary showing" to be entitled to an

evidentiary hearing, at least one jurist within the Eleventh Circuit has found it to be

less than a preponderance of the evidence.  *See United States v. Ohoro*, 724 F. Supp. 2d

1191, 1201 (M.D. Ala. 2010).  In any event, the standard is not lightly met.  *See*

*United States v. Kearse*, No. 2:14-cr-125-FtM-38CM, 2015 WL 2199341, at *8 (M.D.

Fla. May 10, 2015).  As the Eleventh Circuit has explained:

> To mandate an evidentiary hearing, the challenger's attack
> must be more than conclusory and must be supported by
> more than a mere desire to cross-examine.  There must be
> allegations of deliberate falsehood or of reckless disregard
> for the truth, and those allegations must be accompanied by
> an offer of proof.  They should point out specifically the
> portion of the warrant affidavit that is claimed to be false;

> and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Arbolaez*, 450 F.3d at 1294 (quoting *Williams v. Brown,* 609 F.2d 216, 219 (5th Cir. 1979)).  This inquiry focuses on the affiant's credibility in the context of the affidavit. *United States v. Burston,* 159 F.3d 1328, 1334-35 (11th Cir. 1998).

Even if the defendant shows that the affiant intentionally or recklessly included false statements or omitted information, the inquiry does not end.  Rather, the warrant will only be found invalid based on the reckless or intentional inclusion of untrue information if "the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant."  *O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001).  Likewise, the reckless or intentional omission of information will invalidate a warrant only "if inclusion of the omitted facts would have prevented a finding of probable cause." *United States. v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012) (quoting *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009)).  "If, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."  *Kapordelis*, 569 F.3d at 1309 (quoting *Franks,* 438 U.S. at 171-72).

### iii.      Analysis

As noted above, Defendant asserts two *Franks* violations:  (1) that the affidavit incorrectly stated that the trash pull occurred on June 13, 2022; and (2) that the affidavit did not mention that the three bags containing white substance—one of which tested positive for fentanyl—were found inside a pill bottle with a name of someone other than the Defendant.  (Doc. 20 at 14-15).

Upon review, the Undersigned finds that Defendant has not met his burden to make a substantial preliminary showing that he is entitled to an evidentiary hearing because Defendant provides "no affidavit or otherwise sworn statement alleging that [the affiant] knowingly or recklessly included false statements [or omitted material information] in the search warrant" and has not otherwise sufficiently explained the absence of such documentation, as required by Eleventh Circuit precedent.  *See Arbolaez*, 450 F.3d at 1294; *see also United States v. Underwood*, No. 8:11-cr-95-T-26TBM, 2011 WL 2036498, at *1 (M.D. Fla. May 24, 2011) (finding *inter alia* that the defendant is not entitled to a *Franks* hearing because he failed to provide an affidavit or sworn statement alleging that the affiant knowingly or recklessly included the false statement); *United States v. Sapp*, No. 3:08-cr-207-J-16MCR, 2008 WL 11408444, at *2 (M.D. Fla. Oct. 16, 2008), *report and recommendation adopted*, 2008 WL 11407424 (M.D. Fla. Dec. 3, 2008), *aff'd*, 390 F. App'x 985 (11th Cir. 2010) (same); *United States v. Scott*, No. 12-20815-CR, 2013 WL 12090026, at *4 (S.D. Fla. Apr. 23, 2013), *report and recommendation adopted*, 2013 WL 12090196 (S.D. Fla. May

24, 2013), *aff'd*, 579 F. App'x 930 (11th Cir. 2014) (finding *inter alia* that the defendant is not entitled to a *Franks* hearing because he provided no evidence that the affiant knowingly or recklessly omitted certain facts) (citing *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997)).

To the extent Defendant may believe that he need not provide this information because the alleged misrepresentations or omissions are apparent on the face of the documents, the Undersigned is not persuaded. *See United States v. Taylor*, No. 2:20-cr-222-ECM-JTA, 2021 WL 7209524, at *9 n.18 (M.D. Ala. Sept. 13, 2021), *report and recommendation adopted*, 2022 WL 610170 (M.D. Ala. Mar. 1, 2022) (rejecting the defendant's argument that there was no need to submit supporting affidavits because the discrepancies and errors on the face of the Government's search documents established his right to a *Franks* hearing).  The net result here is that Defendant's arguments are conclusory and speculative.  As a result, Defendant would not be entitled to a *Franks* hearing.  *See Arbolaez*, 450 F.3d at 1294.

Nevertheless, assuming *arguendo* that Defendant need not submit an affidavit or sworn statement alleging that the affiant knowingly or recklessly included the false statement or omitted material information or has otherwise explained the absence of such documentation, the motion fails on its merits.  The Undersigned addresses each alleged *Franks* violation below.

### a.    The Date of the Trash Pull

Defendant asserts that Detective Dunlap intentionally or recklessly misdated the trash pull as June 13, 2022, as opposed to June 9, 2022.  (Doc. 20 at 14-15). Defendant argues that considering the detailed recitation of the surveillance, it is "unclear" how the incorrect date was used for the trash pull absent recklessness.  (*Id.* at 15-16, 17).  At the same time, Defendant concedes that the date of the trash pull "is not absolutely material" and instead argues that it "creates cause for concern." (*Id.* at 17).  The Undersigned disagrees on both assertions.

First, the Undersigned finds that Defendant has failed to show that the mistake was anything more than negligence or a scrivener's error.  Indeed, Detective Dunlap conducted surveillance on the residence on both June 9, 2022, and June 13, 2022.  (*See* Doc 25-1 at 4-6).  As a result, a distinct possibility remains that, rather than intentionality or recklessness, Detective Dunlap merely negligently or mistakenly attributed the incorrect date to the trash pull.  (*See id.*).  The Eleventh Circuit has held that a misleading or false affidavit resulting from mere negligence is not enough to warrant a *Franks* hearing.  *See United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001) (quoting *Franks*, 438 U.S. at 171-72 and stating that "[a]llegations of negligence or innocent mistake are insufficient" to establish an entitlement to a *Franks* hearing).

Moreover, even if Detective Dunlap's mistake rose to the level of recklessness, the contention nonetheless fails given that the misstatement is, as Defendant concedes, "not absolutely material."  (*See* Doc. 20 at 17); *see also United States v. Dove*,

No. 8:19-cr-33-T-36CPT, 2020 WL 9172971, at *5 (M.D. Fla. Sept. 4, 2020), *report and recommendation adopted*, 2021 WL 838737 (M.D. Fla. Mar. 5, 2021) (citing *United States v. Williams*, 146 F. App'x 425, 430 (11th Cir. 2005) and noting that "[i]nsignificant, immaterial, or even negligent misrepresentations or omissions, on the other hand, do not trigger the need for a further *Franks* inquiry").  As the Government notes, (*see* Doc. 25 at 9), the affidavit states that Detective Dunlap conducted surveillance on both June 9, 2022, and June 13, 2022, as well as the days preceding and following these dates.  (*See* Doc. 25-1 at 1-7).  Moreover, the affidavit shows that the investigation was ongoing from January 2022, through July 2022. (*See id.*).  Thus, the date that Detective Dunlap incorrectly cited falls both within the timeframe of the investigation and within the dates of the surveillance, undermining any argument that the date itself is material.  (*See id.*).  Such a finding is bolstered when the difference between the dates is considered.  Indeed, the difference between the date given by Detective Dunlap and the actual date of the trash pull is only four days.  Considering the ongoing nature of the surveillance and the investigation itself and considering the totality of circumstances presented in the affidavit, the Undersigned cannot find the mistake in the date of the trash pull to be material.  As a result, Defendant's motion fails on this ground.  *See Dove*, 2020 WL 9172971, at *5, *report and recommendation adopted*, 2021 WL 838737.

### b.   The Name on the Pill Bottle

As to his second allegation of a *Franks* violation, Defendant argues that the affidavit did not mention that three bags with white substance – one of which tested positive for fentanyl – were found inside a pill bottle in the name of Shirley Whitfield.  (Doc. 20 at 15-16).  Defendant contends that this information was omitted because such information eliminates any nexus between the bags containing the white substance and either Defendant or the target residence.  (*Id.*).  For the same reason, Defendant maintains that the information regarding Shirley Whitfield would be material to the judge's probable cause finding.  (*Id.* at 16-17).  Put simply, Defendant maintains that given the lack of evidence that he was the sole occupant of the residence, the fact that the bottle was in someone else's name is highly relevant to the probable cause analysis.  (*Id.*).

In response, the Government contends that including the name on the pill bottle would not eliminate probable cause because the residence was the target of the search.  (Doc. 25 at 10).  As a result, the Government contends Detective Dunlap's allegations that Defendant was committing crimes out of the residence does not preclude others from doing the same, and, therefore, the name of another on the pill bottle is not material to a finding of probable cause to search the residence.  (*See id.*).  Similarly, the Government highlights that Detective Dunlap cited two occasions when Defendant's known associate visited the residence without Defendant and met with unknown persons for a short period of time before departing.  (*Id.*).  The Government argues that, given the reference to other persons,

Defendant cannot show that Detective Dunlap intentionally or recklessly omitted information about Shirley Whitfield.  (*Id.*).

Upon review, the Undersigned again finds that Defendant has not met his burden to show that he is entitled to a *Franks* hearing.  As an initial matter, the Undersigned is not persuaded that Defendant has shown that Detective Dunlap intentionally or recklessly omitted the information.  As the Government suggests, Detective Dunlap's decision to cite two times when a known associate of Defendant met with another person without Defendant belies the argument that Detective Dunlap deliberately or recklessly failed to refer to another individual.  *Cf. United States v. Rhame*, No. 1:16-cr-67-SCJ-CMS, 2018 WL 1082327, at *8 (N.D. Ga. Feb. 28, 2018) (denying a motion for a *Franks* hearing because *inter alia* "[i]t is inconceivable that [the affiant] would deliberately falsif[y a relevant] statement to manufacture[] evidence, only to then turn around and provide a perfectly accurate account of [the] statement" (third and fifth alterations in original) (internal quotation marks omitted)).  Indeed, the reference to Shirley Williams – or even more broadly that the bags containing the white substance were in a pill bottle in her name – has no greater effect on the probable cause analysis than the reference to Defendant's known associate meeting with individuals without Defendant.  In that regard, both could be considered as showing that other persons were also possessing and distributing controlled substances out of the residence.  As the Government asserts, this does not ultimately negate the probable cause contained in the warrant.  Thus, the Undersigned finds unpersuasive any argument suggesting that Detective Dunlap

intentionally or recklessly omitted material information related to the name on the
pill bottle. *Cf. Rhame*, 2018 WL 1082327, at *8.

Moreover, the Undersigned finds that even assuming *arguendo* that Defendant
met his burden as to the first prong of the *Franks* analysis, the motion is due to be
denied because the challenged statement is not essential to a finding of probable
cause. *See Kapordelis*, 569 F.3d at 1309 (quoting *Franks,* 438 U.S. at 171-72 and
noting that "[i]f, when material that is the subject of the alleged falsity or reckless
disregard is set to one side, there remains sufficient content in the warrant affidavit to
support a finding of probable cause, no hearing is required").

To be valid, a search warrant must be supported by probable cause, which
exists "when the totality of the circumstances allows a conclusion that there is a fair
probability of finding contraband or evidence at a particular location." *United States
v. Pettaway*, 842 F. App'x 406, 410 (11th Cir. Jan. 14, 2021), *cert. denied,* 142 S. Ct.
280 (2021) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999)).
In determining whether probable cause exists to authorize a search, a court "is
simply to make a practical, common-sense decision whether, given all the
circumstances set forth in the affidavit before him[,] . . . there is a fair probability that
contraband or evidence of a crime will be found in a particular place." *Illinois v.
Gates*, 462 U.S. 213, 238 (1983).  Moreover, "[p]robable cause does not require
overwhelmingly convincing evidence, but only 'reasonably trustworthy
information.'" *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting *Ortega*

*v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996)).  "Yet, an affidavit will be found deficient if it contains merely conclusory allegations and fails to provide sufficient information in order for the judge to conclude 'that evidence or contraband will probably be found at the premises to be searched.'"  *United States v. Evans*, No. 3:05-cr-159-J-32HTS, 2006 WL 2221629, at *13 (M.D. Fla. Aug. 2, 2006) (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).  Moreover, the Eleventh Circuit has held that "[o]pinions and conclusions of experienced agents regarding a set of facts are a factor in the probable cause equation."  *United States v. Leach*, 498 F. App'x 915, 917 (11th Cir. 2012) (citing *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995)).

Here, the Undersigned finds that if the Court were to ignore the trash pull altogether, probable cause would still be established in the Residence Affidavit.  (*See* Doc. 25-1 at 1-8).  In reaching this conclusion, the Undersigned first considers the basis of the Government's request for a warrant.

In beginning his application for a search warrant, Detective Dunlap represented that:

> he believe[d] and ha[d] good reason to believe that the Laws of the State of Florida relative to the Sale and Possession of Controlled Substances, to wit, Fentanyl, which is in violation of Florida State Statute 893.13(1)(a)(1), are being violated on or in the following described dwelling and surrounding curtilage and that the evidence of said crime is contained in the dwelling, and/or the curtilage.

(Doc. 25-1 at 1).

Against this backdrop, the Undersigned considers the totality of circumstances of the unchallenged portions of the Residence Affidavit to determine whether the affidavit – when read in a commonsense manner – established that there is a "fair probability" that evidence of the possession and sale of a controlled substance will be found in the residence.  *See Illinois*, 462 U.S. at 238.

In beginning his probable cause affidavit, Detective Dunlap provided his training and experience related to narcotic investigations.  (Doc. 25-1 at 1). Specifically, Detective Dunlap noted that he:  (1) is a member of the Manatee County Sheriff's Office Special Investigations Division Intelligence Unit; (2) has been in that position for almost seven years and employed by the Sheriff's Office for twenty-three years; and (3) is responsible for *inter alia* investigating narcotics related crimes, infiltrating and dismantling drug trafficking organizations, documenting counterfeiting operations, drug smuggling organizations, highway drug interdictions, and long-term trafficking investigations.  (*Id.*).

Detective Dunlap then explained the background of the investigation and the results to date.  (*See id.* at 1-7).  More specifically, Detective Dunlap represented *inter alia* that:  (1) he had received a tip that a man named "Dre" was selling drugs from his residence using CashApp for payment, (2) he was able to identify "Dre" as Defendant who resided at the subject residence and had been released from prison in 2020 after receiving a fifteen-year sentence for drug trafficking; (3) he had obtained CashApp records showing that from January 4, 2022, through March 3, 2022, Defendant received $67,000.00 with amounts ranging from $20-$100, which based

on his knowledge, training, and experience, he knows to be common amounts in relation to the street-level sale of narcotics, (4) one CashApp payment noted that the payment was for "Scooby snacks," which, Detective Dunlap asserted, is commonly used in the drug community to refer to mind-altering substances, (5) a Financial Crimes Enforcement Network ("FinCEN") report was filed on March 24, 2022, because of the number of peer to peer transactions, with no apparent lawful purpose, occurring at times of day that are consistent with the sale of narcotics, (6) a July 5, 2022, wage and hour report showed that according to the Department of Labor, Defendant has had no work records since the first quarter of 2020; (7) surveillance of the residence to be searched conducted through June and July 2022, showed vehicles pulling into the driveway, briefly meeting with Defendant – usually without leaving their vehicle – and then departing; (8) the surveillance also showed a known associate of Defendant meeting with third parties for short periods of times without Defendant; and (9) at least some of these short visits involved an exchange of a suitcase or a handoff of an unknown item between Defendant and the visiting persons. (*Id.* at 1-7).

Upon review of the totality of circumstances as described above, the Undersigned finds that the Residence Affidavit sufficiently established a "fair probability" that evidence of the possession and sale of narcotics could be found at the residence to be searched. *See Illinois*, 462 U.S. at 238. Having established his training and experience in narcotics investigations, Detective Dunlap first attested as to the tip he received that an individual named "Dre" was selling fentanyl. (*See* Doc.

25-1 at 2-9).  Detective Dunlap represents that he was able to identify this individual
as Defendant, residing at 303 22nd St. E. Bradenton, Florida.  (*Id.* at 2).  Detective
Dunlap then set forth the facts, discovered throughout the course of his investigation,
that he believes, supported by his knowledge and experience, establish probable
cause – or fair probability – that the possession and sale of narcotics was occurring in
or on the residence and its curtilage.  (*Id.* at 2-7).

Put simply, the Undersigned finds that the totality of circumstances presented
in the affidavit show a fair probability that the possession and sale of narcotics was
occurring in and around the residence and on its curtilage.  Importantly, as noted
above, "[o]pinions and conclusions of experienced agents regarding a set of facts are
a factor in the probable cause equation."  *Leach*, 498 F. App'x at 917 (citing *Robinson*,
62 F.3d at 1331 n.9).  Thus, the Undersigned accepts Detective Dunlap's opinions
and conclusions that the notation of "Scooby Snacks," the payment amounts, and
the length and frequency of the visits to the house are all indicative to the sale of
narcotics.  (*See* Doc. 25-1 at 2-7).  These opinions coupled with the facts and
circumstances discovered throughout the ongoing investigation and presented in the
affidavit, when considered in the totality of circumstances, suggest that there is a fair
probability that Defendant or a known associate is selling narcotics from within the
residence.  Put differently, when considering the unchallenged content of the
affidavit, the Undersigned finds that probable cause was established through
Detective Dunlap's representations of the background of the investigation and its

results, based on both his experience and his review of the evidence.  (*See* Doc. 25-1 at 1-9).

To the extent Defendant's arguments in his motion or at the hearing could be understood as arguing that probable cause does not exist because the evidence of the warrant spans too great a period and the warrant is, therefore, stale, (*see, e.g.*, Tr. at 79), the Undersigned is not persuaded.  This argument reads the affidavit too narrowly.  Put simply, Defendant's piecemeal critiques of the timing of the circumstances described in the affidavit disregard what the law says the reviewing judge is supposed to do with the affidavit—*i.e.*, to examine the totality of circumstances present in the affidavit to determine whether probable cause (that is a fair probability) exists to issue the warrants.  *See United States v. Pettaway*, 842 F. App'x 406, 410 (11th Cir. Jan. 14, 2021), *cert. denied,* 142 S. Ct. 280 (2021).  So then, as now, the Court examines the totality of circumstances presented in the affidavits.  In undertaking this analysis, the Court may consider "[o]pinions and conclusions of experienced agents regarding a set of facts."  *See United States v. Leach*, 498 F. App'x 915, 917 (11th Cir. 2012) (citing *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995)).

As explained above, Detective Dunlap's affidavit establishes that the investigation was ongoing from January 2022 through the time the warrant was executed.  (*See* Doc. 25-1 at 2-7).  At base, the warrant application requests a warrant to search the house because, at the time of the warrant, Detective Dunlap had a belief that a fair probability existed that evidence of the crime would be found in the

residence.  (*See id.* at 1-8).  Such a belief was supported *inter alia* by the recent

surveillance of the residence, which surveillance signified to Detective Dunlap –

based on his experience and training – that narcotic dealing was occurring from

within the residence.  (*See id.* at 2-7).  Such a belief was bolstered by the earlier

discoveries in the investigation, including the information obtained from CashApp, a

tipster, FinCEN, and the Department of Labor.  (*See id.* at 1, 7).  Ultimately, when

viewed under the totality of circumstances, the Undersigned finds that a fair

probability existed that as of July 2022, narcotic possession and sales remained

ongoing from within the residence or on its curtilage, as evinced by the facts set forth

in the affidavit and Detective Dunlap's opinions as to the significance of those facts.

(*See id.* at 1-7); *see also Leach*, 498 F. App'x at 917.

Thus, the Undersigned finds that Defendant has failed to "make[] a

'substantial preliminary showing' [either] that (1) [Detective Dunlap] deliberately or

recklessly included false statements, or failed to include material information, in

[either] affidavit; [or] (2) the challenged statement or omission was essential to a

finding of probable cause."  *See United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th

Cir. 2006) (citing *Franks*, 438 U.S. at 155-56).  As a result, the Undersigned

recommends that Defendant's request for a *Franks* hearing be denied.  The net effect

of a denial of a *Franks* hearing, based on Defendant's inability to meet even the

preliminary showing of a *Franks* hearing, is that Defendant cannot establish a *Franks*

violation.  Given that Defendant cannot establish a *Franks* violation, even if the

warrant does not establish probable cause, the Government may rely on the good-faith exception, if applicable.

### B.   The Good-Faith Exception

#### i.   Legal Standards

Under what is known as the exclusionary rule, "[e]vidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).  The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974).  "The exclusionary rule serves to deter police misconduct by preventing the introduction of evidence obtained through police illegality." *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing *Nix v. Williams*, 467 U.S. 431, 442-43 (1984)).

The Supreme Court created a "good-faith exception" to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984).  The exception applies to evidence that otherwise would be prohibited by Fourth Amendment violations when the evidence is obtained "by officers reasonably relying on a warrant issued by a detached and neutral magistrate" that is later invalidated for lack of probable cause.  *Id.*  In other words, "[w]hen law enforcement officers act in good faith and in a reasonable reliance upon a judge's order, exclusion is not warranted because there is no

unlawful conduct to deter." *United States v. Goldstein*, 989 F.3d 1178, 1196 (11th Cir.

2021).  Courts may consider the totality of the circumstances by "look[ing] beyond

the four corners of the affidavit and search warrant to determine whether [the officer]

reasonably relied upon the warrant." *Martin*, 297 F.3d at 1318.  "The government

bears the burden of demonstrating that the good faith exception applies." *United*

*States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021).

"The *Leon* good faith exception applies in all but four limited sets of

circumstances." *Martin*, 297 F.3d at 1313.  Those four scenarios in which the good-

faith exception does not apply are as follows:

> (1) where "the magistrate or judge in issuing a warrant was
> misled by information in an affidavit that the affiant knew
> was false or would have known was false except for his
> reckless disregard of the truth"; (2) "where the issuing
> magistrate wholly abandoned his judicial role in the manner
> condemned in" *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319,
> 99 S. Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the
> affidavit supporting the warrant is "so lacking in indicia of
> probable cause as to render official belief in its existence
> entirely unreasonable"; and (4) where, depending upon the
> circumstances of the particular case, a warrant is "so facially
> deficient—i.e., in failing to particularize the place to be
> searched or the things to be seized—that the executing
> officers cannot reasonably presume it to be valid."

*Id*. at 1313 (quoting *Leon*, 468 U.S. at 923).

### ii.    Analysis

The Government proffers that, even if the Court were to find the warrant does

not establish probable cause, the good-faith exception applies because when

considering the totality of circumstances set forth in the affidavit as well as those

known to Detective Dunlap at the time of the warrant's application and execution, Detective Dunlap relied in good faith on the warrant issued by a neutral judge.  (*See* Doc. 25 at 11-13).  The Undersigned agrees.

As presented in the Government's opposition brief and bolstered by Detective Dunlap's testimony, the Undersigned finds that, based on the totality of the circumstances, Detective Dunlap acted in good faith in reliance on the affidavit. Indeed, the results of his investigation coupled with his knowledge and experience related to narcotics trafficking support a finding that Detective Dunlap believed in good faith that he had probable cause for a warrant.  Such a belief was bolstered when the judge issued the warrant.

Defendant's position that the good-faith exception did not apply to the Residence Warrant arose from his allegations of a *Franks* violation.  (*See* Doc. 20 at 13).  Given the recommendation above that the presiding United States District Judge reject the contention that a *Franks* violation occurred, the Undersigned finds the argument moot.

Moreover, in considering the Government's position on its merits, the Undersigned finds that the good-faith exception applies.  The Eleventh Circuit has held that the Court "could look beyond the four corners of the affidavit and search warrant to determine whether [the affiant or executing officer] reasonably relied upon the warrant," including facts known to the affiant "that were not included in the affidavit."  *See United States v. Martin*, 297 F.3d 1318-19 (11th Cir. 2002).  Thus, the Undersigned considers Detective Dunlap's testimony at the hearing as to the

other facts bolstering his belief that he relied in good faith that the warrant was supported by probable cause at the time of its execution.

Detective Dunlap testified about the other facts of which he was aware during his investigation but that he did not include in the warrant. Such facts included, but are not limited to: (1) a statement from an individual who had overdosed that he had received the narcotics from "Dre," (2) that Defendant lived at the residence with his girlfriend, (3) that the location of the trash can in relation to the residence's mailbox suggested it belonged to the residence, (4) that the bags containing the white substance were in a tied trash bag, as opposed to being strewn on top of the tied bag, (5) one of the individuals sending money to Defendant via CashApp was doing so to pay off her daughter's debts so that her daughter could get treatment for her drug addiction, (6) Detective Dunlap recognized individuals who frequented the residence as individuals with drug histories, and (7) Detective Dunlap recognized the names of people sending money via CashApp as individuals with drug histories. (*See* Tr. at 7-8, 10, 14-15, 20-21, 23, 28-29, 31, 33-34). Ultimately, under the totality of the circumstances, considering the facts known to Detective Dunlap at the time he applied for and executed the search warrant, the Undersigned finds that Detective Dunlap believed that probable cause existed to execute a search warrant at that time, (*see* Doc. 25-1 at 1-7; Tr. at 7-8, 10, 14-15, 20-21, 23, 28-29, 31, 33-34).

Finally, to the extent Defendant argues that the good-faith exception cannot apply because the warrant facially lacks particularity, (*see* Doc. 20 at 10-11), the Undersigned is not persuaded. "Particularity is the requirement that the warrant

must clearly state what is sought." *United States v. Maali*, 346 F. Supp. 2d 1226, 1239 (M.D. Fla. 2004) (quotation omitted).  The particularity requirement is necessary to avoid undermining the warrant requirement and to decrease the risk of allowing excessive intrusion into personal rights protected by the Fourth Amendment.  *United States v. Wuagneux*, 683 F.2d 1343, 1348-49 (11th Cir. 1982).

Ultimately, the Eleventh Circuit has noted that a warrant's description of the place to be searched only requires "sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority."  *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986); *see also United States v. Rousseau*, 628 F. App'x. 1022, 1025 (11th Cir. 2015).  Similarly, a description of the items to be seized "is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized."  *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985); *see also Rousseau*, 628 F. App'x. at 1025. However, given the circumstances of surrounding an investigation and ultimate decision to seek a warrant, "[i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Wuagneux*, 683 F.2d at 1349.

Defendant challenges the particularity of the warrant because it permits the search of the residence, "its curtilage, any outbuildings, any vehicles located within the curtilage, and any and all persons found therein, who are reasonably believed to

be involved in the crime or crimes" for controlled substances, monies believed to be part of the alleged crimes, documents pertaining to the alleged crimes, and any devices or paraphernalia used with the seized items.  (*See* Doc. 20 at 10-11; *see also* Doc. 25-1 at 9).

The Eleventh Circuit has rejected a similar particularity argument in *United States v. Horne*, 198 F. App'x 865, 871 (11th Cir. 2006), finding instead that the warrant was valid because it "described the residence in detail and limited the search to drugs and drug paraphernalia and parts of the premise and people involved in crimes related to drugs." *United States v. Horne*, 198 F. App'x 865, 871 (11th Cir. 2006).  Because the warrant here likewise described the residence in detail and limited the search to drugs, drug paraphernalia, and cellphones, monies, or firearms that had been used or obtained in the furtherance of the drug trafficking crimes, (Doc. 25-1 at 9), the Undersigned finds no reason to depart from the Eleventh Circuit's reasoning, *see Horne*, 198 F. App'x at 871; *see also United States v. Smith*, 918 F.2d 1501, 1508-09 (11th Cir. 1990) (holding that the warrant was not over broad where it sought to search premises consisting of a house, garage, another building within the curtilage, and a screened pool where the confidential informant made a purchase at the address and walked through these areas to make the purchase).  Indeed, the warrant here is limited to permitting the search areas where there is a fair probability that evidence of the alleged crime can be found and the seizure of evidence of the crime or that has been used to further the crime.  (Doc. 25-1 at 9-10).

Thus, the Undersigned finds Defendant's particularity argument to be meritless. *See Horne*, 198 F. App'x at 871.

In sum, the Undersigned finds that when considering the totality of the circumstances, the record does not suggest that Detective Dunlap unreasonably relied on the warrant. After all, "'an officer cannot be expected to question the magistrate[ judge's] probable-cause determination' because '[i]t is the magistrate[ judge's] responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Leon*, 468 U.S. at 921). As a result, the Undersigned finds the good-faith exception applies, and Defendant's motion is due to be denied. *See United States v. Davis*, No. 2:21-cr-101-MHT-JTA, 2022 WL 3009240, at *9 (M.D. Ala. July 1, 2022), *report and recommendation adopted*, 2022 WL 3007744 (M.D. Ala. July 28, 2022) ("Because there is no law enforcement wrongdoing to deter, suppression is not warranted.").

Because the Government has met its burden to show that the good-faith exception applies, the Undersigned finds that Defendant's motion to suppress is due to be denied to the extent it seeks the suppression of any evidence obtained in the execution of the Residence Warrant. Because the Undersigned finds that the good-faith exception applies, the Undersigned also finds that an analysis of whether the warrant was in fact supported by probable cause is unnecessary.

Alternatively, in the event the presiding United States District Judge disagrees with the Undersigned's findings and recommendations above and instead finds that the good-faith exception does not apply, the Undersigned recommends that the presiding District Judge recommit the matter to the magistrate judge assigned to the case for a *Franks* hearing, if appropriate, and subsequent report and recommendation.

## III.   The Storage Unit Warrant

### A.   Parties' Arguments

Defendant next argues that suppression of evidence obtained from the search of the storage unit is warranted because (1) evidence obtained from a prior illegal search (*i.e.*, the search of the residence) cannot be used to establish probable cause for a new warrant and (2) the Storage Unit Affidavit contains opinions, beliefs, and possibilities in addition to facts.  (Doc. 20 at 18).  Put simply, Defendant argues that the only connection between the surveillance of the residence and the storage unit is Detective Dunlap's conclusory statement that "the frequency and duration of visits in relation to the frequency of narcotics-related activity as established through surveillance strongly indicates that ADAMS is using the premises to be searched to store larger amounts of narcotics and/or the illegal proceeds from the sale of narcotics."  (*Id.*).  Defendant maintains that without a specific link relating the storage unit to the illegal activity, the affidavit lacks probable cause and, as a result, any evidence obtained in the search must be suppressed.  (*Id.* at 18-19).

28

Additionally, Defendant asserts that the warrant lacks particularity because it includes the language "including but not limited to," and, therefore, authorizes the search of everything in the storage unit. (*Id.* at 19-20).[4]

Further, Defendant argues that the Government cannot rely on the good-faith exception because the warrant is facially invalid in that the description of the places to be search is so broad and confusing that no reasonable officer could rely on it to determine what may be searched. (*Id.* at 20-21). In support, Defendant notes that the location to be search includes the curtilage, despite that the storage unit does not have curtilage. (*Id.*).

In response, the Government maintains that the storage unit affidavit is supported by probable cause, under the totality of the circumstances, because Detective Dunlap relied on: (1) his surveillance of the residence, (2) the trash pull, (3) the information gathered from CashApp and the Florida Department of Revenue, (4) the evidence seized in the execution of the residential search warrant, and (5) a statement from the manager of the storage facility stating that Defendant was the sole renter of the unit. (Doc. 25 at 7). The Government highlights that Detective Dunlap represented that based on his training and experience, the

---

[4] Defendant's motion appears to assert that this "catch-all" language is attached to the "items to be searched." (Doc. 20 at 19). Upon review of the Storage Unit Affidavit, the Undersigned finds that the language is attached solely to particular items be seized. (Doc. 25-1 at 16). As a result, the Undersigned considers Defendant's argument to be a typographical error and assesses the argument as it relates to the items to be seized. (*See id.*).

frequency and duration of Defendant's visits to the storage unit and the frequency and duration of the activity that he observed at the residence, signified to him that Defendant could be using the storage unit to store larger amounts of narcotics.  (*Id.* at 8).  The Government maintains that this assertion, coupled with the evidence obtained during the search of the residence, could lead a reasonable judge to conclude that Defendant was likely storing the narcotics at the storage unit.  (*Id.*).

The Government also maintains that the storage unit search warrant is sufficiently particularized because it lists the address of the storage unit, a description of the unit, its location, color, and numbers.  (*Id.*).

B.    **Legal Standards**

To be valid, a search warrant must be supported by probable cause, which exists "when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location."  *United States v. Pettaway*, 842 F. App'x 406, 410 (11th Cir. Jan. 14, 2021), *cert. denied,* 142 S. Ct. 280 (2021) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999)). In determining whether probable cause exists to authorize a search, a court "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Moreover, "[p]robable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy

information.'"  *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996)).  "Yet, an affidavit will be found deficient if it contains merely conclusory allegations and fails to provide sufficient information for the judge to conclude 'that evidence or contraband will probably be found at the premises to be searched.'"  *United States v. Evans*, No. 3:05-cr-159-J-32HTS, 2006 WL 2221629, at *13 (M.D. Fla. Aug. 2, 2006) (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).  Moreover, the Eleventh Circuit has held that "[o]pinions and conclusions of experienced agents regarding a set of facts are a factor in the probable cause equation."  *United States v. Leach*, 498 F. App'x 915, 917 (11th Cir. 2012) (citing *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995)).

### C.   Analysis

As an initial matter, the Undersigned first addresses Defendant's arguments in his motion and presented at the hearing that suppression is appropriate because the Storage Unit Affidavit relied on the items found during the search of the residence. (Doc. 20 at 18; Tr. at 82-83).  It appears that the crux of Defendant's argument is that because the search of the residence was illegal, nothing found can be used to support the Storage Unit Warrant.  (*See id.*).  The Undersigned finds that the argument fails considering the above findings and recommendations.  More specifically, because the Undersigned finds that the good-faith exception applies to the Residence Warrant, assuming *arguendo* that the warrant lacked probable cause, the search was not illegal.

*See* Section II.B.ii., *supra*.  As a result, nothing prohibits Detective Dunlap from supporting the Storage Unit Affidavit with the fruits of the residence search.  *See United States v. Sapp*, No. 3:08-cr-207-J-16MCR, 2009 WL 10697606, at *8 (M.D. Fla. Jan. 12, 2009), *report and recommendation adopted*, 2009 WL 10697541 (M.D. Fla. Jan. 27, 2009) (noting favorably that the officers applied for a second search warrant based on things observed during the execution of the first warrant).

With that in mind, the Undersigned finds Defendant's other arguments to be meritless.  Considering the totality of circumstances, the Undersigned finds that the Storage Unit Warrant was supported by probable cause.

The Storage Unit Warrant permitted the search of the storage unit, its curtilage, vehicles on the curtilage, and persons found therein who are reasonably believed to be involved in the alleged criminal activity for seizing (1) the specified controlled substances, (2) monies involved in the sale or purchase of controlled substances, (3) ledgers, documents, or receipts pertaining to the purchase or sale of narcotics, firearms, or devices or paraphernalia used with controlled substances, and (4) evidence of dominion and control of the area to be searched.  (Doc. 25-1 at 16).

In support of the warrant, Detective Dunlap executed a probable cause affidavit that began by providing his training and experience related to narcotic investigations.  (Doc. 25-1 at 12).  Specifically, Detective Dunlap noted that he (1) is a member of the Manatee County Sheriff's Office Special Investigations Division Intelligence Unit; (2) has been in that position for almost seven years and employed by the Sheriff's Office for twenty-three years; and (3) is responsible for *inter alia*

investigating narcotics related crimes, infiltrating and dismantling drug trafficking organizations, documenting counterfeiting operations, drug smuggling organizations, highway drug interdictions, and long-term trafficking investigations. (*Id.*).

Detective Dunlap then provided the background of the investigation and the results to date.  (*See id.* at 12-14.)  More specifically, Detective Dunlap represented *inter alia* that:  (1) he had been conducting surveillance on Defendant's primary residence and observed suspected narcotics transactions, (2) he had conducted a trash pull at the residence and found a substance that tested positive for fentanyl in a field presumptive test, (3) he had received a tip that Defendant was selling narcotics from his residence using CashApp for payment, (4) he had received CashApp records showing that from January 4, 2022, through March 3, 2022, Defendant received $67,000.00 with amounts ranging from $20-$100, (5) a FinCEN report showed that Defendant had not had meaningful employment since at least 2020, (6) a search of the residence had resulted in the seizure of *inter alia* trafficking amounts of fentanyl, cocaine, methamphetamine, and oxycodone, a loaded firearm, and a large amount of U.S. currency, (7) Defendant had a prior conviction for trafficking in cocaine, (8) surveillance of the Defendant showed short visits to the storage unit, (9) a subpoena on the management of the storage facility showed that Defendant is the sole renter of the unit and he frequently visited the unit for short periods of time, often late at night or early in the morning, (10) based on Detective Dunlap's training and experience, the frequency and duration of the visits, coupled with the suspected narcotics-related

activity at the residence, indicates that Defendant is storing larger amounts of narcotics and/or the proceeds of the sales of narcotics, and (11) through Detective Dunlap's experience and training, he had learned that narcotics dealers often possess firearms and ammunition – which they often store in a separate location – in furtherance of their sales.  (*Id.*).

Upon review of the totality of circumstances as described above, the Undersigned finds that the Storage Unit Affidavit sufficiently established a "fair probability" that evidence of the possession and sale of narcotics could be found at the storage unit to be searched.  *See Illinois*, 462 U.S. at 238.  Having established his training and experience in narcotics investigations, Detective Dunlap summarizes the background of the investigation, the facts and circumstances he had discovered over the course of the investigation, and the fruits of the search of the residence.  (*See* Doc. 25-1 at 12-14).  Detective Dunlap then explained the effect of his observations and discoveries, supported by his knowledge and experience.  (*See id.*).

Put simply, the Undersigned finds that the totality of circumstances presented in the affidavit show a fair probability that evidence of the possession and sale of narcotics may be found in the storage unit.  Importantly, as noted above, "[o]pinions and conclusions of experienced agents regarding a set of facts are a factor in the probable cause equation."  *Leach*, 498 F. App'x at 917 (citing *Robinson*, 62 F.3d at 1331 n.9).  Thus, the Undersigned accepts Detective Dunlap's opinions and conclusions that the evidence he had discovered throughout the investigation as well as the length and frequency of the visits to the storage unit are all indicative of the

use of the storage unit to advance the sale of narcotics.  (*See* Doc. 25-1 at 12-14).

Moreover, the facts and circumstances surrounding the ongoing investigation

supported by Detective Dunlap's experiences and training, suggests that there is a

fair probability that evidence of the possession and sale of narcotics may be found in

the storage unit.  (*See id.*).  In reaching this finding, the Undersigned relies heavily on

the short, frequent visits that Defendant made to the unit as well as the times of day

that Defendant visited the unit and Detective Dunlap's opinions that such activity

suggest that the storage unit is used in furtherance of the alleged criminal activity.

(*Id.* at 14).

While Defendant challenges the reliance on Detective Dunlap's experience

and opinions, the Court may consider them and rely on them when assessing

probable cause.  *See Leach*, 498 F. App'x at 917.  Indeed, despite Defendant's

contentions, this is not an instance in which Detective Dunlap *only* provided

conclusory statements.  (*See* Doc. 25-1 at 12-14); *see also United States v. Evans*, No.

3:05-cr-159-J-32HTS, 2006 WL 2221629, at *13 (M.D. Fla. Aug. 2, 2006) (quoting

*United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) and noting that "an

affidavit will be found deficient if it contains merely conclusory allegations and fails

to provide sufficient information in order for the judge to conclude 'that evidence or

contraband will probably be found at the premises to be searched'").  Instead,

Detective Dunlap summarized the facts and circumstances he had come to learn

throughout his investigation and explained to the Court, based on his experience and

training, the significance of this information.  (*See* Doc. 25-1 at 12-14).  Ultimately,

the Undersigned finds Detective Dunlap's conclusions, coupled with the facts and observations set forth in the affidavit, sufficient to establish probable cause. Put differently, the Undersigned finds that probable cause was established through Detective Dunlap's representations of the background of the investigation and its results, based on *both* his experience *and* his review of the evidence. (*See* Doc. 25-1 at 12-14).

Additionally, because the Undersigned addresses the validity of the warrant in full, the Undersigned construes Defendant's good-faith argument as contending that the warrant is invalid based on a lack of particularity. (*See* Doc. 20 at 20-21).

"Particularity is the requirement that the warrant must clearly state what is sought." *United States v. Maali*, 346 F. Supp. 2d 1226, 1239 (M.D. Fla. 2004) (quotation omitted). The particularity requirement is necessary to avoid undermining the warrant requirement and to decrease the risk of allowing excessive intrusion into personal rights protected by the Fourth Amendment. *United States v. Wuagneux*, 683 F.2d 1343, 1348-49 (11th Cir. 1982). Ultimately, the Eleventh Circuit has noted that a warrant's description of the place to be searched only requires "sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986); *see also United States v. Rousseau*, 628 F. App'x. 1022, 1025 (11th Cir. 2015). Similarly, a description of the materials to be seized "is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized." *United States v. Santarelli*, 778 F.2d 609, 614 (11th

Cir. 1985); *see also Rousseau*, 628 F. App'x. at 1025.  At the same time, because the circumstances of an investigation and ultimate decision to seek a warrant, "[i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit."  *Wuagneux*, 683 F.2d at 1349.

While Defendant correctly notes that the warrant authorizes the search of the curtilage of the storage unit, which does not exist, as well as vehicles on the curtilage, the Undersigned finds that such an error does not warrant the suppression of evidence.  While the inclusion of the storage unit's "curtilage" may have been imprecise – given that a unit does not have curtilage, *see United States v. McKenzie*, 13 F.4th 223, 232 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2766 (2022) (noting that "[w]hen one rents a storage unit, no curtilage comes with it"); *see also Dow Chem. Co. v. United States*, 476 U.S. 227, 235 (1986) (declining to extend the curtilage protections to industrial curtilage) – the Undersigned finds that suppression is not necessary. Indeed, even if that portion of the warrant were overly broad, the Court would be permitted to sever the defective portions of the warrant and suppress only those items that were seized in the search of the alleged curtilage or vehicles therein.  *See United States v. Cook*, 657 F.2d 730, 734 (5th Cir. 1981); *see also United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993) (collecting cases from eight circuits that have held that where a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant

considered valid); *United States v. Sapp*, No. 3:08-cr-207-J-16MCR, 2009 WL 10697606, at *7 (M.D. Fla. Jan. 12, 2009), *report and recommendation adopted*, 2009 WL 10697541 (M.D. Fla. Jan. 27, 2009) (citing favorably *Brown*, 984 F.2d at 1077 for its reasoning that the overly broad portion of a warrant could be severed).  Thus, because the majority of the warrant is not overly broad, the Undersigned finds that the portions authorizing a search of the curtilage or vehicles on the curtilage should be severed.  *See id.*  In turn only evidence from those searches would need to be suppressed.  *See Cook*, 657 F.2d at 734.  Because those areas were not searched, no evidence was obtained and, therefore, there is nothing to suppress.

Finally, to the extent Defendant argues that the warrant lacks particularity because the description of the items to be seized includes the language "including but not limited to," (*see* Doc. 20 at 19-20), the Undersigned disagrees.  While additional precision may be preferable, the inclusion of the language "including but not limited to" does not invalidate a warrant.  *See United States v. Elkins*, No. 1:16-cr-002406-ELR-JFK, 2017 WL 2457494, at *11 (N.D. Ga. Apr. 13, 2017), *report and recommendation adopted*, 2017 WL 2457153 (N.D. Ga. June 6, 2017) (citing *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982); *United States v. Brown*, No. CR407-308 2008 WL 2356344, at *4 (S.D. Ga. June 9, 2008)).  Instead, when such a statement is modified by phrases limiting the items to be seized, courts have found that the warrant does not permit a general search and is, therefore, sufficiently particularized.  *See id.* (finding a warrant that authorized the seizure of "[i]tems

stolen from entering autos including but not limited to any electronics, backpacks, handguns, credit cards, state identifications" was sufficiently particularized because the language "including but not limited to" was limited by the requirement that the items be stolen from entering autos); *cf. Strauss*, 678 F.2d at 892 (finding that a warrant permitting the seizure of items, "including a blue and white Chevrolet Motor truck with dual rear wheels; a GMC mobile home; an Itasca motor home; related registration, ownership and identification documents and markings; and *other stolen property*" was valid because it provided a description "precise enough to prevent a general search") (citation and internal quotation marks omitted; emphasis added); *Brown*, 2008 WL 2356344, at *4 (rejecting a defendant's particularity argument based on the warrant's description of items to be seized, which included the phrase "or any other criminal offense" because the phrase "did not provide carte blanche for the executing officers to rummage aimlessly through [the defendant's] belongings" (citations omitted)).

Here, the warrant permits the seizure of "dominion and control evidence consisting of and including, but not limited to, utility company receipts, rent receipts, cancelled mail, envelopes, magazines, checkbooks, bank statements, tax documents, photographs and keys found therein." (Doc. 25-1 at 16). Importantly, "[a] search warrant may be used, not only to gather evidence of a criminal activity, but also to gather evidence of who controlled the premises suspected of connection with criminal acts." *See United States v. Lisbon*, 835 F. Supp. 2d 1329, 1346 (N.D. Ga. 2011). The use of a generic term or a general description is not a *per* se violation of

the Fourth Amendment; instead, when a more specific description of the items to be seized is unavailable, a general description will suffice. *See United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A 1981). Upon review, the Undersigned finds that the inclusion of the phrase "including, but not limited to" in this instance does not render the affidavit overly broad because the phrase is modified and limited by the preceding phrase permitting the seizure of "dominion and control evidence." (*See id.*). Thus, because the language is modified and limited in scope to evidence that may be properly gathered in the execution of a search warrant, the Undersigned finds Defendant's contention meritless. *See Elkins*, 2017 WL 2457494, at *11, *report and recommendation adopted*, 2017 WL 2457153; *Lisbon*, 835 F. Supp. 2d at 1346.

In sum, the Undersigned finds that suppression of evidence obtained in the execution of the Storage Unit warrant need not be suppressed. Even assuming that portions of the warrant were overly broad, the Court can sever the portions and find valid the remainder of the warrant. As a result, the Undersigned recommends that the motion be denied on this ground.

## CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that the Motion to Suppress (Doc. 20) be **DENIED** in its entirety.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on June 29, 2023.

_____
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties